FIRST UNION NATIONAL BANK *v.* HI HO MALL
SHOPPING VENTURES, INC., ET AL.
(SC 17151)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued December 6, 2004—officially released April 12, 2005

*Gregory T. D'Auria*, associate attorney general, with whom were *Jane R. Rosenberg*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Eliot D. Prescott*, assistant attorney general, for the appellant (defendant state of Connecticut).

*Michael J. Ajello*, with whom, on the brief, was *Christopher M. McKeon*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The plaintiff, First Union National Bank, brought this action to foreclose municipal tax liens recorded against a property in Bridgeport that is owned by the defendant state of Connecticut (state)[1] and is used as part of the campus of Housatonic

---

[1] The state is one of several defendants against whom the plaintiff brought this foreclosure action, the other defendants being Lafayette Bank and Trust Company, United Illuminating Company and the city of Bridgeport. The state is the only defendant involved in the present appeal, however, which arises solely from the trial court's denial of the state's motion to dismiss. In this opinion, we refer to the state by name.

Community College. The state appeals from the trial court's denial of its motion to dismiss, in which it claimed that General Statutes § 49-31[2] does not waive sovereign immunity so as to permit the foreclosure of the state's ownership of real property. We agree with the state's interpretation of § 49-31, and, therefore, we reverse the judgment of the trial court.

Our resolution of this appeal is guided by the following facts. The plaintiff acquired certain municipal tax liens from the city of Bridgeport by assignment. The liens encumber two parcels of real property in Bridgeport, one located at 303 State Street and the other located at 333 State Street. In 1994, the state purchased the property located at 303 State Street and now uses that land as part of the campus of Housatonic Community College. In 1997, the plaintiff instituted a foreclosure action seeking to foreclose tax liens for taxes assessed against the 333 State Street property from 1989 to 1994. In 2003, the plaintiff amended the tax foreclosure complaint to include the 303 State Street property. The state subsequently moved to dismiss the foreclosure action, asserting that, pursuant to the doctrine of sovereign immunity, the trial court lacked subject matter jurisdiction. Although the state maintains that all the taxes on the 303 State Street property have been paid and the tax liens should have been released, the state nevertheless claimed in its motion to dismiss that it was immune from suit. The trial court denied the state's motion to dismiss, concluding that pursuant to § 49-31, sovereign immunity is waived in a case where

[2] General Statutes § 49-31 provides: "In any action to foreclose a mortgage or lien on any land in which the state, or any officer or agent thereof, claims to have an interest subordinate to that of the party seeking the foreclosure, the state, or such officer or agent, as the case may be, may be made a party defendant, and such interest may be foreclosed in the same manner and with the same effect as if such interest were held by an individual, except that no judgment may be rendered against the state or any officer or agent for money or costs of suit."

the state has an ownership interest in real property that is subordinate to the interest of the party seeking foreclosure. The state appealed from the trial court's denial of its motion to dismiss to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The state claims on appeal that the trial court improperly denied its motion to dismiss. Specifically, the state maintains that the doctrine of sovereign immunity bars the present action, and any statutory waiver of sovereign immunity in § 49-31 must be construed narrowly. The state further argues that the word "interest" as used in § 49-31 is ambiguous, and must be construed narrowly so as not to encompass the state's ownership interest in any real property. The state also claims that the trial court's construction of § 49-31 would lead to serious interference with the state's oversight of an educational institution, which is a primary state function. Finally, the state maintains that the plaintiff has the option of pursuing a claim for just compensation as an alternative remedy, so the plaintiff is not without recourse in this matter if it is indeed owed real estate taxes on 303 State Street, but cannot foreclose against the property.

The plaintiff counters that § 49-31 is clear on its face, and that the plain language of the statute indicates that the state waives its sovereign immunity in a foreclosure action where it has *any* interest in real property, including an ownership interest. Further, the plaintiff argues that even if § 49-31 is *not* clear and unambiguous, its legislative history compels the result reached by the trial court, that sovereign immunity is waived in this case. Specifically, the plaintiff notes that the legislature amended the statute in 1935 to replace the narrower term "attachment or a lien of any kind" with the broader term "interest." We agree with the state, and conclude

that § 49-31 does not waive sovereign immunity to the extent that the state's *ownership* interest in real property may be foreclosed.

As a preliminary matter, we set forth the applicable standard of review. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 610–11, 793 A.2d 215 (2002).

Whether the legislature has waived the state's sovereign immunity protection in the present case raises a question of statutory interpretation. General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Although the plaintiff maintains that the waiver language of § 49-31 is clear and unambiguous, the state contends that the term "interest" as used in § 49-31 is not statutorily defined, and thus it is subject to multiple interpretations. The term "interest," construed narrowly, could refer to a mortgage or lien interest, but, construed broadly, could encompass an ownership interest. We agree with the state, therefore, that the meaning of the term "interest" in § 49-31 is not

unambiguous, and hence we are not limited to the text of § 49-31 in determining its meaning. When the meaning of a statute is not plain and unambiguous, "we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 141, 788 A.2d 1158 (2002).

We begin, as we always do, with the relevant language of § 49-31, which provides in relevant part that "[i]n any action to foreclose a mortgage or lien on any land in which the state . . . claims to have an interest subordinate to that of the party seeking the foreclosure, the state . . . may be made a party defendant, and such interest may be foreclosed in the same manner and with the same effect as if such interest were held by an individual, except that no judgment may be rendered against the state or any officer or agent for money or costs of suit." We must determine whether this language permits foreclosure of state owned property or whether the statute permits only foreclosure of the state's lien, mortgage or similar security interests. We note that the text of § 49-31 permits the state to be made a party defendant in foreclosure actions on land in which the state claims to have "an interest *subordinate* to that of the party seeking foreclosure . . . ." (Emphasis added.) General Statutes § 49-31. In order to determine the legislature's intention in adopting this provision, it is necessary to determine the meaning of an interest "subordinate" to that of the party seeking foreclosure.

Where a statute does not define a term, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Love*, 246 Conn. 402, 408, 717 A.2d

670 (1998). The sixth edition of Black's Law Dictionary provides a helpful definition of "subordinate," defining it as "[p]laced in a lower order, class, or rank; occupying a lower position in a regular descending series . . . ." Black's Law Dictionary (6th Ed. 1990). The most recent edition of that dictionary specifically indicates that this definition applies in the context of a "subordinate lien." Black's Law Dictionary (8th Ed. 2004). The use of the term "subordinate" therefore implicates a ranking of lien interests, but does not necessarily implicate an ownership interest, which is the most comprehensive interest in real estate. The term "ownership" is defined as "[t]he complete dominion, title, or proprietary right in a thing or claim . . . ." Black's Law Dictionary (6th Ed. 1990).

We acknowledge that the term "interest" was not always included in the text of the statute regarding foreclosure actions against the state. In 1935, the legislature replaced the phrase "attachment or a lien of any kind" in the predecessor to § 49-31 with the word "interest." See Public Acts 1935, c. 46, amending General Statutes (Cum. Sup. 1933) § 1109b. The plaintiff contends that this change indicates the legislature's intent to broaden the waiver of sovereign immunity and to subject state owned property to foreclosure. The legislative history surrounding the 1935 amendment to the statute does not offer any explanation for the change, however, and we cannot impute one to the legislature because of our well established rule requiring strict construction of statutory waivers of sovereign immunity.

"It is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary

implication." (Citations omitted; internal quotation marks omitted.) *Owner-Operators Independent Drivers Assn. of America* v. *State*, 209 Conn. 679, 684–85, 553 A.2d 1104 (1989). The scope of any statutory waiver "must be confined strictly to the extent the statute provides." (Internal quotation marks omitted.) *Mahoney* v. *Lensink*, 213 Conn. 548, 555–56, 569 A.2d 518 (1990). "Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 558, 737 A.2d 398 (1999). Accordingly, because § 49-31 must be read narrowly, it does not extend to foreclosure of the state's ownership interest in real property.

This interpretation of § 49-31 is buttressed by this court's presumption that the legislature intends to create statutes with reasonable and rational results. See *State* v. *Lutters*, 270 Conn. 198, 217–18, 853 A.2d 434 (2004). Further, this court will not interpret statutes in such a way that would lead to a "bizarre or absurd result." *Vibert* v. *Board of Education*, 260 Conn. 167, 177, 793 A.2d 1076 (2002). The plaintiff urges us to construe § 49-31 to permit foreclosure of liens against state owned properties. The result of such a construction, however, would be the state's loss of title and possession of state owned properties that are critical to the administration of state government, such as, for example, correctional facilities, courthouses and state owned hospitals. This court will not impute to the legislature such an unreasonable and bizarre result on the record in the present case, where the purpose of the statutory amendment is entirely undisclosed.

Moreover, such a result would be contrary to the fundamental public policy that underlies the principle of sovereign immunity. "Sovereign immunity rests on

the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003). If the plaintiff were permitted to proceed with foreclosure of its tax liens against Housatonic Community College, the result would be substantial interference with the state's statutory obligation to provide a state system of public higher education, which includes community colleges. See General Statutes § 10a-1. We conclude, therefore, that the term "interest" in § 49-31 should not be construed to include the state's ownership interest in real property, and that § 49-31 does not waive sovereign immunity so as to permit foreclosure of state owned real property.

The plaintiff maintains that the city of Bridgeport will face substantial interference with the performance of *its* functions should the plaintiff be unable to pursue the present foreclosure action to collect taxes owed. We disagree. The state has conceded in its argument to this court that the plaintiff is not without remedy because the plaintiff may seek just compensation for the state's taking of its property as a result of the allegedly unpaid taxes.[3] Accordingly, the plaintiff has an alternative remedy through which to pursue any unpaid taxes

---

[3] The fifth amendment to the United States constitution, as applied to the states through the due process clause of the fourteenth amendment, provides that "private property [shall not] be taken for public use, without just compensation." In addition, article first, § 11, of the Connecticut constitution similarly provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." This court previously has stated that "[t]he doctrine of sovereign immunity is not available to the state as a defense to claims for just compensation arising under article first, § 11, of the Connecticut constitution." (Internal quotation marks omitted.) *Tamm* v. *Burns*, 222 Conn. 280, 283, 610 A.2d 590 (1992).

on state owned property, thus avoiding any impairment in the performance of the city of Bridgeport's necessary functions.

The judgment is reversed and the case is remanded with direction to grant the state's motion to dismiss and to render judgment dismissing the action as against the state.

In this opinion the other justices concurred.