# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 5, 2015</u>

**NO. 32,549**

**ARTHUR FIRSTENBERG,**

Plaintiff-Appellant/Cross-Appellee,

v.

**RAPHAELA MONRIBOT,**

Defendant-Appellee/Cross-Appellant

and

**ROBIN LEITH,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Arthur Firstenberg
Santa Fe, NM

Pro Se Appellant

Graeser & McQueen, LLC
Christopher L. Graeser
Santa Fe, NM

Joseph L. Romero Trial Lawyer LLC
Joseph L. Romero
Santa Fe, NM

for Appellee

# OPINION

**SUTIN, Judge.**

{1}     Arthur Firstenberg sued his neighbor, Raphaela Monribot, and Robin Leith, the owner-lessor of Ms. Monribot's residence,[1] for injunctive relief and monetary damages under the theories of nuisance and prima facie tort. In his complaint, Mr. Firstenberg alleged that because he suffers from a condition called electromagnetic sensitivity (EMS)[2] that renders him acutely sensitive to electromagnetic radiation, his health was adversely affected by Ms. Monribot's use, within her own residence, of various electronic devices that generate electromagnetic radiation, including a cell phone, a Wi-Fi modem, dimmer switches, and a microcell. After nearly three years of litigation, having held an evidentiary hearing regarding the admissibility of expert scientific testimony, the district court determined that Mr. Firstenberg lacked admissible evidence of general causation and, therefore, granted summary judgment in favor of Ms. Monribot and Ms. Leith (Defendants). Mr. Firstenberg appeals from the court's summary judgment order. As will be discussed in this Opinion, Mr.

---

[1]  Throughout this Opinion, we refer to the house and property owned by Ms. Leith and leased by Ms. Monribot as "Defendants' property."

[2]  The parties, the witnesses, and the district court variously refer to Mr. Firstenberg's condition as electromagnetic hypersensitivity, electromagnetic sensitivity, and idiopathic environmental intolerance attributed to electromagnetic fields. For ease of reference, we use the acronym EMS throughout this Opinion in reference to Mr. Firstenberg's condition.

Firstenberg raises several points of error related to the district court's summary judgment order and to various district court orders that preceded the court's summary judgment.

{2}    The electric lines and meter serving Mr. Firstenberg's property were located on Defendants' property. In an effort to force Mr. Firstenberg to relocate and cease using the electric lines and meter on Defendants' property, Ms. Monribot filed counterclaims against Mr. Firstenberg, seeking declaratory and injunctive relief and trespass damages. The court, having determined that Mr. Firstenberg had an implied easement by necessity that permitted him to access the equipment, granted partial summary judgment in favor of Mr. Firstenberg as to all of Ms. Monribot's counterclaims. Ms. Monribot cross-appeals from this and other district court rulings. Ms. Leith is not a party in this appeal.

{3}    As to Mr. Firstenberg's appeal, we conclude that his arguments do not demonstrate that the district court's summary judgment in favor of Ms. Monribot as to his claims of prima facie tort and nuisance was in error. We hold that Mr. Firstenberg's remaining arguments provide no basis for reversal, and we affirm the district court's summary judgment in favor of Ms. Monribot. As to Ms. Monribot's cross-appeal, we conclude that the issues raised therein provide no basis for reversal.

## BACKGROUND

{4}    This case comes to us with a lengthy and complicated factual and procedural history. As background, we provide only those facts that are necessary to illuminate the appellate issues. Further facts are provided, as necessary, in the body of this Opinion.

{5}    Mr. Firstenberg claims that he suffers from EMS, the numerous symptoms of which are triggered by electromagnetic radiation, such as radio waves emitted from cell phones, computers, electrical transmission lines, and similar devices. Mr. Firstenberg claims, further, that owing to "chemical" and electromagnetic sensitivities, he has been declared totally and permanently disabled by the United States Social Security Administration and that since 1992 Mr. Firstenberg has been collecting social security disability benefits on that basis.

{6}    Mr. Firstenberg and Ms. Monribot met in 2008 when Ms. Monribot responded to his Craigslist ad seeking a personal cook. Mr. Firstenberg hired Ms. Monribot to cook his meals, and he ate his meals in her house; this arrangement lasted approximately one month until Ms. Monribot went to Europe for four months. While she was in Europe, Ms. Monribot sublet her house to Mr. Firstenberg, and later, Mr. Firstenberg purchased the house. Approximately one year later, Ms. Monribot returned to Santa Fe and moved into a house (owned by Ms. Leith) that was next door

to Mr. Firstenberg's house. The day after Ms. Monribot moved in next door to him, Mr. Firstenberg became so ill that he thought he "could die[,]" and his symptoms recurred every time he returned to his house.

{7} Mr. Firstenberg attributed his illness to Ms. Monribot's use, within her own home, of a cell phone and a number of dimmer switches, and later, to her Wi-Fi and microcell. Ms. Monribot refused Mr. Firstenberg's requests to replace her dimmer switches with regular switches, use a land-line instead of a cell phone, to turn off her Wi-Fi, and to unplug her computer at night; she later refused Mr. Firstenberg's offer of $10,000 to comply with his requests. Mr. Firstenberg stated that because Ms. Monribot would not comply with these requests, he was unable to use his house for more than a few minutes at a time without suffering EMS symptoms that were caused by radiation from Ms. Monribot's electronic devices "entering" and "leak[ing]" into his house. Accordingly, Mr. Firstenberg filed the present lawsuit.

{8} Mr. Firstenberg's original complaint, filed on January 4, 2010, for nuisance and prima facie tort named only Ms. Monribot as a Defendant. He later filed a first amended complaint, in which Ms. Leith was added as a defendant and indispensable party, and a second and third amended complaint.[3] His complaint for prima facie tort

---

[3] References to Mr. Firstenberg's "complaint" throughout this Opinion are to his third amended complaint, with references to earlier iterations delineated accordingly.

was founded on allegations that, in summary, Ms. Monribot, who knew of Mr. Firstenberg's EMS, "bombard[ed Mr. Firstenberg's] residence with electromagnetic radiation, which she knew would injure [him]"; that she did so intentionally, with the certainty that injury would necessarily result to Mr. Firstenberg; that her use of electronic devices "rendered [Mr. Firstenberg's] home extremely difficult to inhabit and have caused him years of inconvenience and acute and chronic pain and suffering"; and that Ms. Monribot's conduct "had no valid purpose and was unjustifiable" because she could use a land-line, cable instead of Wi-Fi, and engage in "other simple practices that would not cause her undue expense or inconvenience." Mr. Firstenberg's claim of nuisance was based, in summary, on his allegations that Ms. Monribot's use of electronic devices interfered with his normal residential activities and his private use and enjoyment of his home and his land; Ms. Monribot's actions were intentional and unreasonable; that she knew or should have known that "bombarding [Mr. Firstenberg's] home with electromagnetic radiation interfered with [his] use and enjoyment of his land"; and that her actions caused Mr. Firstenberg "years of inconvenience and acute and chronic pain and suffering." Mr. Firstenberg's complaint sought damages totaling 1.43 million dollars and injunctive relief prohibiting Ms. Monribot from operating equipment that emits electromagnetic radiation.

{9} Ms. Monribot filed counterclaims, seeking a declaratory judgment, injunctive relief, and damages for trespass, seeking to force Mr. Firstenberg to cease using and to relocate the electric lines and meter that are on Defendants' property. Further details related to the factual bases of Ms. Monribot's counterclaims and the district court's disposition of those claims are provided later in this Opinion.

{10} Owing to the nature of Mr. Firstenberg's claims in this case, both Defendants and Mr. Firstenberg obtained experts on the issue of the cause of Mr. Firstenberg's symptoms. Mr. Firstenberg sought to prove that his EMS symptoms were caused by Ms. Monribot's use of electronic devices by relying on the expert testimony of Dr. Erica Elliott, M.D., Mr. Firstenberg's treating physician, and Dr. Raymond Singer, Ph.D, a neurotoxicologist. Defendants sought to prove, through the testimony of psychologist, Dr. Herman Staudenmayer, Ph.D, that Mr. Firstenberg's EMS symptoms were psychological, caused by an undifferentiated somatoform disorder. Each party filed motions seeking to exclude the other's expert on the ground that the proffered expert testimony was inadmissible pursuant to the standards by which the admissibility of scientific expert testimony is measured. Defendants filed an amended version of their motion to exclude the testimony of Drs. Elliott and Singer, and relying on their memorandum in support thereof, Defendants simultaneously filed a motion for summary judgment on the ground that, because Mr. Firstenberg's

proffered experts as to causation were not qualified to provide expert scientific testimony, Mr. Firstenberg could not prove causation.

{11}    Mr. Firstenberg appeals from the district court's order granting summary judgment in favor of Defendants as to all "allegations, counts[,] and causes of action asserted against Defendants in [Mr. Firstenberg's t]hird [a]mended [c]omplaint for [n]uisance and [p]rima [f]acie [t]ort."  The basis for the district court's summary judgment order was Mr. Firstenberg's failure to demonstrate that admissible scientific evidence supported his theory of general causation, that is, that exposure to electromagnetic fields causes, or is capable of causing, the injuries that Mr. Firstenberg complains of, namely, adverse health affects from EMS.  The crux of this appeal, therefore, is the propriety of the district court's summary judgment.

{12}    Although Mr. Firstenberg raises numerous contentions of error related to various district court rulings and actions that preceded the summary judgment order and that, in his view, warrant reversal of particular rulings, many of Mr. Firstenberg's contentions of error were rendered moot by the district court's summary judgment order.  Because we conclude that the district court did not err in granting summary judgment based on Mr. Firstenberg's failure to demonstrate that admissible evidence supported his theory of general causation, we do not consider the moot issues, including issues related to the district court's early partial summary judgment orders

or its denial of Mr. Firstenberg's request for a preliminary injunction. Further, because the district court's summary judgment order was based upon Mr. Firstenberg's lack of evidence of general causation, we limit our discussion to that issue and do not consider issues related to specific causation.

**DISCUSSION**

**I.     Summary Judgment on General Causation Grounds Was Proper**

{13}     "A defendant seeking summary judgment bears the initial burden of negating at least one of the essential elements upon which the plaintiff['s] claims are grounded." *Snow v. Warren Power & Mach., Inc.*, 2014-NMCA-054, ¶ 5, 326 P.3d 33 (omission, internal quotation marks, and citation omitted), *cert. granted*, 2014-NMCERT-005, 326 P.3d 1112. "Once such a showing is made, the burden shifts to the plaintiff to come forward with admissible evidence to establish each required element of the claim." *Id.* (internal quotation marks and citation omitted). Where the defendant negates an essential element of the plaintiff's case, and the plaintiff fails to show that admissible evidence creates an issue of fact regarding that element, summary judgment is appropriate. *Estate of Haar v. Ulwelling*, 2007-NMCA-032, ¶ 10, 141 N.M. 252, 154 P.3d 67. We review the district court's decision to grant summary judgment de novo. *Id.*

{14}    Causation is an essential element of both nuisance and prima facie tort.  *See* UJI 13-1631 NMRA (stating the elements of prima facie tort, including that the defendant's act or failure to act was a cause of the plaintiff's harm); *Scott v. Jordan*, 1983-NMCA-022, ¶ 12, 99 N.M. 567, 661 P.2d 59 (stating that liability for private nuisance requires proof that the alleged nuisance is the cause of an "invasion of another's interest in the private use and enjoyment of land" (internal quotation marks and citation omitted)).  In a toxic tort case, where the plaintiff seeks to establish injury as a result of exposure to a harmful substance, including radiation, the plaintiff is required to prove both general and specific causation.  *See Andrews v. United States Steel Corp.*, 2011-NMCA-032, ¶ 9, 149 N.M. 461, 250 P.3d 887 ("[T]o establish cause in a toxic tort case, the evidence must show both general causation and specific causation." (internal quotation marks omitted)); *Black's Law Dictionary* 1718 (10th ed. 2014) (defining a "toxic tort" as "[a] civil wrong arising from exposure to a toxic substance, such as . . . radiation").  "General causation is whether a substance is capable of causing a particular injury or condition in the general population and specific causation is whether a substance caused a particular individual's injury." *Andrews*, 2011-NMCA-032, ¶ 9 (internal quotation marks and citation omitted).

9

{15}     In the present case, where Mr. Firstenberg sought to establish injury, specifically, EMS symptoms, as a result of exposure to electromagnetic radiation, he was required to prove both general and specific causation. As noted earlier, the district court granted summary judgment on the ground that Mr. Firstenberg failed to present admissible evidence of general causation. Because we affirm the district court's summary judgment order on general causation grounds, we need not and therefore do not address specific causation. *See Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1180 (D.N.M. 2007) (stating that a "[p]laintiff must first demonstrate general causation because without general causation, there can be no specific causation" (internal quotation marks and citation omitted)); *Acosta v. Shell W. Exploration & Prod., Inc.*, 2013-NMCA-009, ¶¶ 9, 12, 26, 293 P.3d 917 (affirming the district court's grant of summary judgment owing to the plaintiff's failure to produce admissible scientific evidence showing general causation).

{16}     In relevant part, in their motion to exclude Mr. Firstenberg's experts, Defendants argued that "EMS [attributed to electromagnetic radiation] has not been established," nor has it "withstood scrutiny in either the scientific or medical communities." Further, Defendants argued that Mr. Firstenberg's proffered experts on the issue of general causation were not qualified, under Rule 11-702 NMRA, to provide scientific expert testimony as to the existence of EMS.

10

{17} In response to Defendants' amended motion for summary judgment, Mr. Firstenberg argued, in relevant part, that because the district court had yet to rule upon Defendants' motion to exclude his proffered experts, Defendants' claim that he could not prove causation was baseless. Also pending at that time was Mr. Firstenberg's motion to exclude Dr. Staudenmayer's testimony on the ground that Dr. Staudenmayer did not meet the qualifications of an expert witness under Rule 11-702.

{18} Over the course of three days, the district court held an evidentiary hearing on the issues raised in Mr. Firstenberg's and Defendants' respective motions to exclude expert witnesses and on Defendants' amended motion for summary judgment. All three proposed experts, Drs. Staudenmayer, Elliott, and Singer, testified at the evidentiary hearing. Following the hearing, the parties filed written arguments.

{19} Having heard the testimony and considered the parties' written arguments, the district court concluded that the testimony of Drs. Elliott and Singer on the issue of general causation was inadmissible under the standard set forth in *State v. Alberico*, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192, for evaluating the admissibility of scientific expert testimony. *See id.* ¶ 51 (relying on *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to enumerate some of the factors that courts should consider in assessing the admissibility of expert scientific testimony under Rule 11-702). Mr. Firstenberg's failure to demonstrate that admissible scientific evidence

11

supported his theory of general causation led the court to grant summary judgment in Defendants' favor on the ground that, in the absence of admissible evidence of general causation, Mr. Firstenberg could not prevail in his claims of nuisance and prima facie tort. Additionally, in light of its summary judgment order, the district court concluded that it was "unnecessary to consider [Mr. Firstenberg's] motion to exclude Dr. Staudenmayer."

{20} Mr. Firstenberg argues on appeal that the district court made a number of errors in regard to his and Defendants' respective proffered experts. We address Mr. Firstenberg's arguments in turn but first we discuss our standard of review and the standards by which the admissibility of expert testimony is to be determined in the district court.

{21} We review the district court's decision to admit or exclude scientific expert testimony under Rule 11-702 for an abuse of discretion. *Alberico*, 1993-NMSC-047, ¶ 58. The abuse of discretion standard allows the reviewing court to reverse a district court's discretionary decision when the decision was "obviously erroneous, arbitrary, or unwarranted" or where it was "clearly against the logic and effect of the facts and circumstances before the court." *Id.* ¶ 63. The party seeking to admit expert testimony bears the burden of showing that the expert is qualified, that the expert's testimony will assist the trier of fact, and that the expert will "testify only as to

12

scientific, technical[,] or other specialized knowledge with a reliable basis." Rule 11-702; *State v. Anderson*, 1994-NMSC-089, ¶ 14, 118 N.M. 284, 881 P.2d 29 (internal quotation marks and citation omitted); *Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 54, 149 N.M. 140, 245 P.3d 585 (Vigil, J., specially concurring).

{22}    In determining whether scientific evidence has a reliable basis, the district court should consider:

> (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation; . . . (4) whether the theory or technique has been generally accepted in the particular scientific field[;] . . . [(5)] whether the scientific technique is based upon well-recognized scientific principle[;] and [(6)] whether it is capable of supporting opinions based upon reasonable probability rather than conjecture.

*Anderson*, 1994-NMSC-089, ¶ 15 (internal quotation marks and citations omitted). Because the foregoing factors were derived from the United States Supreme Court's opinion in *Daubert* and adopted by the New Mexico Supreme Court in *Alberico*, New Mexico cases often refer to them as the "*Daubert*/*Alberico* factors." *See Alberico*, 1993-NMSC-047, ¶ 51 (relying on *Daubert* to enumerate some of the factors that courts should consider in assessing the admissibility of scientific evidence under Rule 11-702); *see, e.g.*, *Loper v. JMAR*, 2013-NMCA-098, ¶ 38, 311 P.3d 1184

13

(referencing the "*Daubert-Alberico* factors"). In this Opinion, for ease of reference, we refer simply to the "*Alberico* factors." We turn now to Mr. Firstenberg's expert witness issues.

**Mr. Firstenberg's Arguments Regarding Dr. Staudenmayer**

{23}    On appeal, Mr. Firstenberg argues that by failing to rule on his motion to exclude Dr. Staudenmayer's testimony, which he continues to assert was inadmissible under Rule 11-702, the court failed to perform its gate-keeping function. We disagree. Insofar as the purpose of Mr. Firstenberg's motion to exclude Dr. Staudenmayer's testimony was to exclude him from testifying at trial, we agree with the district court's ruling that its summary judgment disposition, which eliminated the possibility of this case going to trial, rendered a ruling on Mr. Firstenberg's motion unnecessary.

**Mr. Firstenberg's Arguments Regarding Drs. Elliott and Singer**

{24}    Mr. Firstenberg also argues that the district court erred in excluding the testimony of his proffered experts on a number of grounds. Namely, he argues that the court erroneously ruled on the proffered experts' conclusions, not their methodologies, and thereby failed to apply the appropriate standard in evaluating the admissibility of the experts' testimony; the court's findings were "clearly erroneous" insofar as its order contained various typographical and semantic errors; and the court

erred in excluding the testimony of his treating physician. Additionally, Mr. Firstenberg contends that the district court failed to review and to understand the ninety-three studies that his experts relied upon for their conclusions and were admitted as exhibits and that had the district court familiarized itself with these studies, it would have permitted his experts to testify regarding EMS. We address these arguments summarily.

{25} As an initial matter, we do not consider Mr. Firstenberg's arguments concerning the district court's typographical and semantic errors. To the extent that Mr. Firstenberg believed that these errors warranted further consideration, pursuant to the district court's order he could have timely filed objections to the form of the court's order. Having failed to file such objections in the district court, Mr. Firstenberg has waived the opportunity to challenge the form of the court's order.

{26} Mr. Firstenberg's remaining arguments, founded upon a litany of errors that he alleges were committed by the district court in excluding his experts, are unpersuasive. His arguments in this regard are presented without any attempt to demonstrate that applying the *Alberico* factors to the testimony provided by his experts leads to a conclusion that their testimony constituted admissible scientific testimony. We will not do for Mr. Firstenberg what he has failed to do on his own behalf—that is, search the record in an attempt to demonstrate that his experts meet

the standard of reliability required of expert scientific testimony pursuant to the *Alberico* factors. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

{27} It was Mr. Firstenberg's burden, in the district court, to show that his experts, including his treating physician, Dr. Elliott, were qualified to present scientific expert testimony as to the cause of his EMS symptoms. *See Parkhill*, 2010-NMCA-110, ¶ 20 (stating that a treating physician must be qualified pursuant to the *Alberico* factors in order to present scientific expert testimony as to the external causation of the patient's symptoms); *id.* ¶ 54 (Vigil, J., specially concurring) (recognizing that it is the proponent's burden to demonstrate the admissibility of expert scientific testimony). The district court, having reviewed the parties' briefs, authorities, exhibits, reports, expert affidavits, and testimony, concluded that Mr. Firstenberg did not meet that burden. Having reviewed the testimony of Drs. Elliott and Singer, we conclude that the record fully supports the district court's conclusion that they were not qualified to present expert scientific testimony on the issue of general causation. Mr. Firstenberg's vague and generalized arguments to the contrary provide no basis for reversal. *See Muse*, 2009-NMCA-003, ¶ 72 (recognizing that an appellant seeking

16

to establish that the district court abused its discretion must do so by a discussion of facts, arguments, and rulings that appear in the record).

{28} Finally, Mr. Firstenberg's repeated references to the ninety-three studies upon which his experts relied in forming their conclusions and his argument that the district court erred by failing to familiarize itself with those studies demonstrate a misunderstanding of the law. The studies and articles, standing alone, do not constitute admissible evidence; rather, they constitute inadmissible hearsay. *See* Rule 11-801(A), (C)(2) NMRA; Rule 11-802 NMRA (providing that a written statement that is offered in evidence to prove the truth of the matter asserted in the statement constitutes inadmissible hearsay). Therefore, the district court was under no obligation to independently evaluate the articles and studies upon which Mr. Firstenberg's experts relied in reaching their conclusions. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 28, 148 N.M. 627, 241 P.3d 628 (stating that the district court may not consider inadmissible hearsay in deciding a summary judgment motion).

{29} Rather, to the extent that Mr. Firstenberg wished to rely upon the contents of the articles and studies to demonstrate general causation, it was incumbent upon him to establish, via his experts, that the articles constituted reliable scientific authority. *See Baerwald v. Flores*, 1997-NMCA-002, ¶ 18, 122 N.M. 679, 930 P.2d 816

(recognizing that an "expert may rely on an article because it is the expert who determines, based on study and experience, whether the article is reliable"); *see also Andrews*, 2011-NMCA-032, ¶ 9 (recognizing that "general causation is established by demonstrating (usually by reference to a scientific publication) that exposure to the substance in question causes (or is capable of causing) disease" (alteration, internal quotation marks, and citation omitted)). Had Mr. Firstenberg established that his experts relied on the articles and studies in forming their opinions and that these items were reliable scientific authority, the content of the articles and studies may have been admissible pursuant to a hearsay exception. *See* Rule 11-803(18)(b) NMRA (governing the hearsay exception related to statements in learned treatises, periodicals, or pamphlets). Having failed to demonstrate through his experts that the studies and articles upon which they relied were admissible as reliable scientific authority showing causation, Mr. Firstenberg cannot argue that the district court erred by failing to consider them.

{30} In sum, we conclude that Mr. Firstenberg has not demonstrated that the district court abused its discretion in concluding that his proffered experts were not qualified to present expert scientific testimony on the issue of general causation or in failing to consider the articles and studies upon which they relied. Having concluded that Mr. Firstenberg's arguments regarding the court's expert witness rulings provide no

18

basis for reversal, we further conclude that the court properly granted summary judgment in favor of Defendants as to Mr. Firstenberg's nuisance and prima facie tort claims. In light of this holding, we do not address his contentions of error regarding the court's denial of a preliminary injunction, its order granting partial summary judgment on prima facie tort, and its order granting summary judgment as to nuisance on grounds other than causation, all of which preceded the court's summary judgment order. Consideration of these issues would have no effect on the outcome of this appeal. *See Stennis v. City of Santa Fe*, 2006-NMCA-125, ¶ 28, 140 N.M. 517, 143 P.3d 756 ("[A]n appellate court need not decide an issue that will have no practical effect on the current litigation[.]"), *rev'd on other grounds by* 2008-NMSC-008, 143 N.M. 320, 176 P.3d 309.

**II.     Mr. Firstenberg's Remaining Arguments**

**A.       Mr. Firstenberg's Argument Regarding Federal Preemption**

{31}     At a hearing on a motion filed by Ms. Monribot[4] seeking to dismiss Mr. Firstenberg's complaint on federal preemption grounds, the district court concluded that to the extent that Mr. Firstenberg's claims related to Ms. Monribot's use of her cell phone, the claims were preempted by federal law. In so holding, the district court

---

[4] Ms. Monribot filed this motion prior to Mr. Firstenberg having amended his complaint to add Robin Leith as a Defendant.

19

relied on *Murray v. Motorola, Inc.*, in which the District of Columbia Court of Appeals held that lawsuits based on the premise that radio frequency (RF) emissions from cell phones are harmful to human health are preempted under the doctrine of conflict preemption because "[s]uch claims conflict with the [Federal Communications Commission (FCC)] determination that wireless phones that do comply with the FCC's RF standards are safe for use by the general public[.]" 982 A.2d 764, 768-69, 777-78 (D.C. 2009) (alteration omitted); *see id.* at 772 (recognizing that conflict preemption precludes laws that "under the circumstances of a particular case, stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (omission, alteration, internal quotation marks, and citation omitted)).

{32} Mr. Firstenberg argues that the district court erred in finding federal preemption with respect to cell phones because, he claims, permitting states to entertain tort law actions premised on the harmful effects of RF emissions would not stand as an obstacle to any congressional objectives. In support of his argument, Mr. Firstenberg cites *Pinney v. Nokia, Inc.*, 402 F.3d 430, 457 (4th Cir. 2005), for the proposition that the Federal Communications Act provided no evidence of an objective "of ensuring that all equipment used in connection with wireless telecommunications be subject to exclusive national RF radiation standards that have

20

the effect of precluding state regulation on the subject." We review this issue de novo. *Humphries v. Pay & Save, Inc.*, 2011-NMCA-035, ¶ 6, 150 N.M. 444, 261 P.3d 592 (stating the standard of review applicable to federal preemption issues).

{33} As was the district court, we are persuaded by the reasoning in *Murray*. The *Murray* court considered and rejected the reasoning in *Pinney* because, among other things, the *Pinney* court failed to consider the fact that Congress had expressly mandated that the FCC "shall prescribe and make effective rules regarding the environmental effects of [RF] emissions," a fact that the *Murray* court considered "critical" in considering whether states may permit lawsuits that are premised on the notion that cell phones cause injury. *Murray*, 982 A.2d at 778 n.19, 780-81 (omission, internal quotation marks, and citation omitted). As the *Murray* court explained, in effecting its congressional mandate, the FCC set limits on the RF emissions for cell phones and other devices that "provide a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands." *Id.* at 776 (internal quotation marks and citation omitted). In order to prevail in a lawsuit based on an alleged injury caused by RF emissions from cell phones, a jury would have to accept the premise that FCC's regulations are inadequate to ensure the safe use of cell phones. *Id.* at 781.

21

This would allow cell phone providers to "be held liable even though they indisputably complied with" FCC regulatory requirements, thereby imposing a legal duty that would directly conflict with federal mandates. *Id.* Such lawsuits are therefore conflict preempted. *Id.*

{34} The *Murray* court's reasoning persuasively demonstrates that conflict preemption prohibits states from establishing tort law liability for claimed injuries resulting from federally permitted cell phone RF emissions. Because the *Pinney* court failed to consider the FCC's regulatory authority or its established regulations concerning RF emissions from cell phones, Mr. Firstenberg's reliance on that case is not persuasive. *See Murray*, 982 A.2d at 778 n.19 (discussing *Pinney*). We conclude that the district court appropriately dismissed Mr. Firstenberg's claims of injury resulting from Ms. Monribot's cell phone usage.

**B.     Mr. Firstenberg's Argument Regarding the Americans With Disabilities Act**

{35} Mr. Firstenberg argues that because the district court entered summary judgment in favor of Defendants in regard to his nuisance claim and because the district court dismissed his claims to the extent that they related to Ms. Monribot's use of her cell phone, the court violated his constitutional right to equal protection

under the Fourteenth Amendment and the Americans with Disabilities Act (ADA)[5] and "adopted a new legal doctrine denying access to the courts by a class of individuals." Further, Mr. Firstenberg argues that because the court is a public entity, it is subject to the ADA. Mr. Firstenberg's argument in this regard boils down to a contention that by denying the relief requested in his complaint, the district court violated the ADA and the Fourteenth Amendment. Mr. Firstenberg's arguments in this regard are founded on a misunderstanding of the law, and they provide no basis for reversal.

{36} As an initial matter, Mr. Firstenberg's complaint, having failed to allege that Defendants' conduct amounted to a constitutionally impermissible state action, does not state an actionable claim for a deprivation of equal protection under the ADA. *See Manning v. N.M. Energy, Minerals & Natural Res. Dep't*, 2006-NMSC-027, ¶ 45, 140 N.M. 528, 144 P.3d 87 ("The ADA provides [a] remedy . . . when a state violates the Fourteenth Amendment by depriving an individual of . . . equal protection[.]"); *Foley v. Horton*, 1989-NMSC-061, ¶ 8, 108 N.M. 812, 780 P.2d 638 (stating that an equal protection claim requires the plaintiff to allege or otherwise demonstrate that the at-issue conduct constituted impermissible state action).

---

[5] Mr. Firstenberg alleged in his complaint that he is a "qualified individual with a disability as defined [by] the [ADA]."

23

{37} Furthermore, the district court's mere adjudication of Mr. Firstenberg's lawsuit does not constitute "state action" within the meaning of the Equal Protection Clause. *See King v. King*, 174 P.3d 659, 671 (Wash. 2007) (en banc) (recognizing that a state court's "[a]djudication . . . of private rights is not sufficient state action in the sense necessary to implicate constitutional protections"). Insofar as the United States Supreme Court in *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948), stated a contrary position, the Supreme Court has since modified its position. *Compare id.* (stating that the actions of state courts and their judicial officers "is to be regarded as [an] action of the [s]tate within the meaning of the Fourteenth Amendment"), *with Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 937, 939 n.21 (1982) (recognizing that "the party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor" and rejecting the notion "that a private party's mere invocation of state legal procedures" satisfies the state-actor requirement (internal quotation marks and citation omitted)). *See King*, 174 P.3d at 671 (recognizing that "the United States Supreme Court has . . . pulled back the reach of *Shelley*, if not overruling it sub silentio, by requiring something more than the reliance on a . . . judicial proceeding" (internal quotation marks omitted)).

{38} In sum, we reject the notion that Mr. Firstenberg's lawsuit against two private individuals was somehow transformed, by virtue of the district court's adjudication

24

of the matter, into an equal protection lawsuit under the ADA. We will not consider this issue further.

### III. Summary Regarding Mr. Firstenberg's Appeal

{39} In sum, regarding Mr. Firstenberg's appeal, we conclude that the district court did not err in granting summary judgment in Defendants' favor on the ground that Mr. Firstenberg failed to demonstrate that admissible scientific evidence supported his theory of general causation, that is, that electromagnetic fields are capable of causing the types of harm from which he suffers. Because we conclude that Mr. Firstenberg has not demonstrated reversible error on that or any other ground, we affirm the district court's summary judgment. We turn now to the issues raised by Ms. Monribot in her cross-appeal.

### IV. Ms. Monribot's Cross-Appeal

{40} In her cross-appeal, Ms. Monribot raises four contentions of error, of which we address only two. Ms. Monribot argues that the district court erred in failing to dismiss Mr. Firstenberg's complaint in its entirety on the ground that federal preemption barred Mr. Firstenberg's claims of injury resulting from any of her electronic devices. She argues, further, that the district court erred in denying, in part, Defendants' amended motion for partial summary judgment on Mr. Firstenberg's prima facie tort claim. Having affirmed, on direct appeal, the district court's

25

summary judgment as to all of Mr. Firstenberg's claims, the foregoing cross-appeal arguments are moot, and we do not address them. *See Crutchfield v. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

{41} Additionally, Ms. Monribot argues that the district court erred in finding that Mr. Firstenberg had an implied easement by necessity to access the electrical meter on Defendants' property. Finally, she argues that the district court erred in denying Defendants' motion to recover costs. We address each of these arguments in turn.

**A.    The Easement Issue**

{42} The electric meter and switch that provided electricity to Mr. Firstenberg's house were located on the exterior wall of Defendants' house. In response to Ms. Monribot's counterclaims by which she sought to exclude Mr. Firstenberg from using Defendants' property to access his electric meter and switch and to force him to remove his electrical meter and switch from the property, Mr. Firstenberg filed a motion for summary judgment on the ground that, in relevant part, he had an implied easement by necessity that permitted the location of and his access to the electrical meter and switch.

{43} The district court granted Mr. Firstenberg's partial summary judgment motion. In its summary judgment order, the court stated that Mr. Firstenberg had an implied

26

easement by necessity to access his electric meter on Defendants' property that "permits all reasonable uses, including but not necessarily limited to turning on and off the electrical switch, accessing the meter, [and] access for maintaining and repairing this switch[.]" The court further stated that Mr. Firstenberg's right of access "does not permit abusive use of the easement" for which "the Landowner" (Ms. Leith) would have "all remedies afforded by law for the over-burdening [of] the [servient] estate."

{44}    Ms. Monribot contends that the court erred in determining that Mr. Firstenberg had an implied easement by necessity. "We review de novo legal questions arising from a district court's application of law to the facts involving the existence of an easement." *Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2014-NMCA-017, ¶ 25, 317 P.3d 842. Likewise, we review de novo the district court's decision to grant summary judgment. *Estate of Haar*, 2007-NMCA-032, ¶ 10.

{45}    In considering the nature of implied easements by necessity, New Mexico courts rely on the Restatement (Third) of Property: Servitudes § 2.15 (2000). *Kysar v. Amoco Prod. Co.*, 2004-NMSC-025, ¶ 25, 135 N.M. 767, 93 P.3d 1272 (relying on the Restatement (Third) of Property § 2.15 to discern the nature of an implied easement by necessity). According to the Restatement, an implied easement by necessity arises out of "[a] conveyance that would otherwise deprive the land

27

conveyed to the grantee . . . of rights necessary to reasonable enjoyment of the land . . . unless the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights." Restatement (Third) of Property § 2.15. The phrase "[r]ights necessary to reasonable enjoyment of property" is not limited to access rights; it applies to "whatever is reasonably necessary for the enjoyment of property, if the conveyance would otherwise eliminate the property owner's right to do those things." *Id.* cmt. b. This includes the delivery of electricity. *Id.* cmt. d. To find an implied easement by necessity, the necessity must have arisen as a result of a severance of rights held by a single owner, for example, where a single parcel of land is divided into two parcels. *Id.* cmt. c. "The easement by necessity rests . . . heavily upon the intent of the" grantor, and unless there is "a clear indication to the contrary, the grantor is presumed to have intended to have . . . conveyed to his grantees, a means of access to the property in question, so that the land may be beneficially utilized." *Los Vigiles Land Grant*, 2014-NMCA-017, ¶ 28 (alteration, internal quotation marks, and citations omitted).

{46}     In support of his summary judgment motion, Mr. Firstenberg provided, among other things, an affidavit of Yolette Catanach, the former owner of Defendants' and Mr. Firstenberg's properties. Ms. Catanach stated that the two properties originally constituted a single lot upon which two houses (now occupied by Mr. Firstenberg and

28

Ms. Monribot) were located. When Ms. Catanach purchased the lot, both houses were served by a single overhead power line, with the electric meters and switches for both houses attached to the house now occupied by Ms. Monribot. In 1991 Ms. Catanach and her husband split the single lot into two lots, and in so doing, they granted an express easement "as shown and for all existing utilities[.]" Ms. Catanach's affidavit attached, as an exhibit, the deed that indicated the parameters of the express easement. The express easement did not refer to or include the electric meter or switch for the house now occupied by Mr. Firstenberg; however, Ms. Catanach stated that at the time the lot was split, she and her husband intended that the location of and access to the switch and the meter would continue unchanged and unimpaired. Additionally, Mr. Firstenberg stated in an affidavit that there was no electric utility pole on his street from which he could receive electricity service.

{47} Based on the foregoing facts, we conclude that Mr. Firstenberg made a prima facie showing that he had an implied easement by necessity for the transmission of electricity and for access to the switch and meter attached to Defendants' property that entitled him to summary judgment as to Ms. Monribot's counterclaims. To counter Mr. Firstenberg's prima facie showing, Ms. Monribot was required to demonstrate that disputed issues of material fact precluded summary judgment. *See Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 7, 137 N.M. 64, 107 P.3d 504

29

(stating that once a movant for summary judgment makes a prima facie showing that summary judgment is appropriate as a matter of law, the burden shifts to the opponent to show at least a reasonable doubt as to the existence of a genuine issue of fact).

{48} In response to Mr. Firstenberg's summary judgment motion, Ms. Monribot argued, in relevant part, as admitted to by Mr. Firstenberg, that because he could have an electric utility pole installed on his street and have his electric meter and switch relocated to his own property, Mr. Firstenberg failed to establish the requisite element of "necessity" for an implied easement by necessity. Ms. Monribot reiterates this argument on appeal, claiming that the question whether it would be unreasonable for Mr. Firstenberg to access utilities through his own street was an issue of fact that should have precluded summary judgment. We disagree.

{49} Ms. Monribot's argument evokes the notion of strict, instead of reasonable, necessity. Under the strict necessity test, where "any alternative was available to an easement claimant, no easement would be found." *Martinez v. Martinez*, 1979-NMSC-104, ¶ 29, 93 N.M. 673, 604 P.2d 366. This state does not follow the strict necessity test; rather, "[t]he test of necessity in New Mexico is whether the party claiming the easement could, through the reasonable expenditure of labor or money, create an alternative [to the easement] on his own estate." *Id.*

30

{50} The only evidence in the record pertaining to the cost of installing a utility pole on Mr. Firstenberg's property and relocating his meter and switch was Mr. Firstenberg's statement that the cost of doing so would not be reasonable, specifically, that it would be "in excess of $12,000." Ms. Monribot failed to provide any evidence to refute that cost, nor did she attempt to show that the cost was reasonable, for example, by providing evidence of the relative values of the properties or the effect, if any, of the easement on those values. *See Jackson v. Nash*, 866 P.2d 262, 269-70 (Nev. 1993) (stating that in determining whether the expense of creating an alternative to an easement is reasonable, the court may consider the cost of creating the alternative as compared with the values of the servient and the dominant estates and the extent to which the easement will affect their respective values).

{51} Implicit in the district court's determination that Mr. Firstenberg had an implied easement by necessity was its conclusion that the cost of creating a substitute source of electricity was not reasonable under these circumstances and that reasonable minds would not differ as to that issue. *See Beggs v. City of Portales*, 2013-NMCA-068, ¶ 11, 305 P.3d 75 (stating that summary judgment is appropriate "[w]here reasonable minds will not differ as to an issue of material fact" (internal quotation marks and citation omitted)). Ms. Monribot, having failed to present

31

evidence that would support a contrary conclusion to Mr. Firstenberg's summary judgment motion, has therefore failed to raise an issue of material fact in that regard.

{52}     Ms. Monribot further argues that the district court relied on inadmissible parol evidence in granting summary judgment. *See Amethyst Land Co. v. Terhune*, 2014-NMSC-015, ¶ 24, 326 P.3d 12 (stating that parol evidence is inadmissible to the extent that it varies "or explain[s] the terms or contradict[s] the legal effect of an unambiguous written instrument" (internal quotation marks and citation omitted)). Specifically, Ms. Monribot argues that the district court relied on Ms. Catanach's affidavit to conclude that the electrical meter and switch serving Mr. Firstenberg's property "was really part of the declared utility easement[.]" The district court's legal conclusion that Mr. Firstenberg had an implied easement by necessity is an obvious indication that the court did not conclude that the express easement encompassed the electrical meter and switch. Ms. Monribot's argument is, therefore, unavailing.

{53}     For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Mr. Firstenberg on the ground of an implied easement by necessity, which permits his reasonable, non-abusive use of the easement for the purpose of accessing his electrical meter and switch.

## B.    The Costs Issue

{54}    Pursuant to Rule 1-054(D)(1) NMRA, "costs . . . shall be allowed to the prevailing party unless the court otherwise directs[.]"  Rule 1-054 vests the district court with wide discretion in determining whether to award costs.  *Martinez v. Martinez*, 1997-NMCA-096, ¶ 20, 123 N.M. 816, 945 P.2d 1034.  Ms. Monribot argues that because Defendants prevailed on summary judgment, they were entitled to recover their costs totaling $84,857.60 and that the district court erred in refusing to award that sum.  "[W]e review the trial court's order granting or denying an award of costs for abuse of discretion."  *Id.* ¶ 17.

{55}    At a hearing on Defendants' motion to recover costs, the district court ruled that a number of the costs Defendants sought to recover were not recoverable.  *See* Rule 1-054(D)(2) (enumerating the costs that "generally are recoverable").  The district court denied Defendants' remaining costs on equitable grounds, including Mr. Firstenberg's inability to pay and the disparity of income between him and Ms. Leith's insurance company, which had paid for nearly all of Defendants' costs.

{56}    On appeal, Ms. Monribot does not specifically identify the costs to which her claims of error are directed, nor does she persuasively demonstrate why, based on the record in this case, the court's discretionary decision to deny Defendants' costs was "contrary to logic or reason."  *Marshall v. Providence Wash. Ins. Co.*, 1997-NMCA-

33

121, ¶ 28, 124 N.M. 381, 951 P.2d 76 (stating that in order to demonstrate that the district court abused its discretion in awarding costs, the appellant must demonstrate that the "court's ruling [was] contrary to logic or reason"). Rather, Ms. Monribot's argument regarding costs is comprised of a series of quotations from various authorities with no coherent attempt to demonstrate how those authorities relate to the circumstances of this case or why reversal is warranted. We will not attempt to decipher this unclear argument. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating that an appellate court "will not review unclear arguments[] or guess at what a party's arguments might be" (alteration, internal quotation marks, and citation omitted)).

{57}     In exercising its discretion to deny or to award costs under Rule 1-054(D), the district court is permitted to disallow costs based upon equitable grounds, including a losing party's inability to pay. *See Martinez*, 1997-NMCA-096, ¶ 20 (stating that equitable considerations are appropriate in determining whether to award costs); *Gallegos ex rel. Gallegos v. Sw. Cmty. Health Servs.*, 1994-NMCA-037, ¶ 30, 117 N.M. 481, 872 P.2d 899 ("[T]he losing party's ability to pay is a proper factor to consider in determining whether to award costs."). Further, in reviewing an issue on appeal, this Court presumes that "the district court is correct and . . . the burden is on the appellant to clearly demonstrate the district court's error." *Wilde*, 2010-NMCA-

34

085, ¶ 30 (internal quotation marks and citation omitted). Because Ms. Monribot has failed to demonstrate error as to costs, we cannot say that the district court abused its discretion in that regard, and therefore, her argument provides no basis for reversal.

**CONCLUSION**

{58} We affirm the district court's summary judgment in favor of Defendants as to Mr. Firstenberg's claims of prima facie tort and nuisance. We affirm the district court's summary judgment in favor of Mr. Firstenberg as to Ms. Monribot's counterclaims. And we affirm the district court's decision to deny Defendants' motion for costs. As to the remaining issues raised by either party, we conclude that they do not require reversal.

{59} **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**CYNTHIA A. FRY, Judge**

35